IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MICHELE COLLEEN RUNDGREN, | ) | CIVIL NO. 10-00252 JMS/LEK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS BANK OF |
| vs. | ) | AMERICA CORPORATION, AND |
| | ) | MORTGAGE ELECTRONIC |
| THE BANK OF NEW YORK | ) | REGISTRATION SYSTEMS, |
| MELLON, a New York corporation; | ) | INC.'S MOTION TO DISMISS |
| COUNTRYWIDE HOME LOANS, | ) | FIRST AMENDED COMPLAINT |
| INC., a California corporation, by | ) | FILED ON JULY 2, 2010 |
| merger now Bank of America, a | ) | |
| California corporation; MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC., a Delaware | ) | |
| corporation; and DOES 1-30, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANTS BANK OF AMERICA CORPORATION, AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FILED ON JULY 2, 2010

## I. INTRODUCTION

On February 24, 2010, Plaintiff Michele Colleen Rundgren

("Plaintiff") filed this action against Defendants Bank of New York Mellon

("BONY"), Countrywide Home Loans, Inc. ("Countrywide"), Bank of America

("BOA"), and Mortgage Electronic Registration Systems, Inc. ("MERS") alleging

state law claims stemming from mortgage transactions and a subsequent notice of

nonjudicial foreclosure concerning real property located at 4487 Emmalani Drive, Princeville, Hawaii 96722 (the "subject property").

Currently before the court is BONY and MERS's ("Moving Defendants") Motion to Dismiss, in which they argue that Plaintiff has failed to state any cognizable violation of Hawaii state law. Based on the following, the court GRANTS Moving Defendants' Motion to Dismiss.

## II. BACKGROUND

**A.    Factual Background**

As alleged in the First Amended Complaint ("FAC"), on February 15, 2005, Plaintiff received a first and second subprime mortgage loan on the subject property from Countrywide in the amounts of $966,000 and $200,000 respectively. FAC ¶ 9. In processing these loans, Countrywide employees allegedly (1) stated Plaintiff's monthly gross income at $19,750 even though she had no income; (2) exaggerated Plaintiff's assets to be over $2,000,000; (3) listed that Countrywide employees had conducted a "face-to-face interview" even though they received information from Plaintiff via phone; (4) secured a false appraisal of the subject property; (5) rushed Plaintiff through signing the documents without allowing her to read them; and (6) charged Plaintiff exorbitant loan origination and processing fees. *Id.* ¶¶ 10, 13, 15. At the time of these loan transactions, MERS was listed as

Plaintiff's "mortgagee as nominee" for Countrywide.  *Id.* ¶ 12.

On December 11, 2009, BONY recorded a "Notice of Intention To Foreclose Under Power of Sale" for the subject property at the State Bureau of Conveyances in the City and County of Honolulu.  *Id.* ¶ 17.  This Notice stated that BONY was the current assignee of Plaintiff's first mortgage, and that the nonjudicial foreclosure auction sale was scheduled for March 10, 2010 at noon.  *Id.*  As for the mechanics of the auction, the Notice provided, among other things, that "[a]t the close of auction, Purchaser shall pay at least 10% of the highest successful bid price," but that BONY "may submit a credit bid up to the amount of the secured indebtedness."  *Id.* Ex. G.  The Notice further referenced a Website for bidding instructions, which explained that the property transfer would be by quitclaim conveyance within thirty days after the auction, but that the purchaser must deliver the balance of the bid price no later than twenty-one days after the sale.  *Id.* Ex. H.  The FAC alleges that these requirements placed bidders at a disadvantage and deterred them from entering the bidding.  *Id.* ¶ 21.

At the auction, BONY was declared the highest bidder.  Defs.' Ex. 2.[1]

---

[1]  Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of Moving Defendants' Exhibits 2 and 3, which are public records, specifically, a Mortgagee's Affidavit of Foreclosure Under Power of Sale and a Mortgagee's Quitclaim Deed Pursuant to Power of Sale, both recorded in the State of Hawaii Bureau of Conveyances.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (providing that a court may "take judicial notice of

(continued...)

A deed is now recorded in the State of Hawaii Bureau of Conveyances vesting title of the subject property in BONY.  Defs.' Ex. 3.

The FAC asserts that Plaintiff first learned of "the fraudulent unfair and deceptive acts and practices" committed against her when BONY noticed the nonjudicial foreclosure.  FAC ¶ 23.

## B.    Procedural Background

On March 10, 2010, Plaintiff filed her Complaint in the First Circuit Court of the State of Hawaii, and Defendants subsequently removed this action to this court.  The FAC alleges claims for (1) wrongful nonjudicial foreclosure in violation of Hawaii Revised Statute ("HRS") Ch. 667 against BONY (Count I); (2) violation of HRS §§ 480-12 and 480-13 against all Defendants (Count II); and (3) title accounting against MERS (Count III).

On July 19, 2010, Moving Defendants filed their Motion.[2]  Plaintiff filed an Opposition on September 3, 2010, and Moving Defendants filed a Reply on September 13, 2010.  A hearing was held on September 27, 2010.  During the hearing, Plaintiff's counsel raised several arguments that were not briefed in her

---

[1](...continued)
matters of public record outside the pleadings and consider them for purposes of a motion to dismiss") (quotations omitted).

[2]  Countrywide has not yet been served with the Complaint.

Opposition.  The court therefore granted Moving Defendants leave to file a

Supplemental Reply by October 4, 2010, and for both parties to file supplemental

briefing regarding the legislative history of Hawaii's nonjudicial foreclosure statute

by October 5, 2010.  Moving Defendants filed their Supplemental Reply on

October 4, 2010, and both parties filed supplemental briefing on the legislative

history on October 5, 2010.

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss

a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans

Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must

accept as true all of the allegations contained in the complaint -- "is inapplicable to

legal conclusions."  *Iqbal*, 129 S. Ct. at 1949.  Accordingly, "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do

not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

*Id*. at 1949 (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief.  *Id.* at 1950.

## IV.  <u>DISCUSSION</u>

Moving Defendants argue that the FAC should be dismissed for a variety of reasons, and the court addresses each argument in turn.

## A.    **Violation of HRS Ch. 667, Part I (Count I)**

Count I of the FAC alleges that BONY violated (1) HRS § 667-5.7 by requiring a successful bidder to pay more than ten percent downpayment prior to closing; *see* FAC ¶ 25; and (2) HRS § 667-5 by allowing and accepting its own credit bid on the property and using a notice that directed interested bidders to a website for additional rules for the auction.

### *1.     HRS § 667-5.7*

BONY's rules for the auction outline that the successful bidder is required to make a ten percent downpayment at the auction, and then pay the balance of the purchase price no later than twenty-one days after the sale.  FAC Ex. H.  BONY would then transfer the subject property via quitclaim deed to the successful bidder within thirty days of the auction.  *Id.*  The FAC alleges that

Defendants' requirement that the successful bidder make full payment prior to closing violates HRS § 667-5.7.  In comparison, Moving Defendants argue that this claim should be dismissed because § 667-5.7 does not limit when, after the auction but before the closing, a mortgagee can require full payment of the purchase price.

The parties' dispute raises an issue of statutory construction, and the court therefore turns first to the language of § 667-5.7.  *See State v. Mainaaupo*, 117 Haw. 235, 247, 178 P.3d 1, 13 (2008) ("When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." (citation and quotation signals omitted)).  Section 667-5.7 provides:

> At any public sale pursuant to section 667-5, the successful bidder at the public sale, as the purchaser, shall not be required to make a downpayment to the foreclosing mortgagee of more than ten per cent of the highest successful bid price.

By beginning with the prepositional phrase "[a]t any public sale pursuant to section 667-5," § 667-5.7 limits the percent downpayment a mortgagee can require *at the public sale*.  In other words, this modifying phrase acts as a temporal limitation and qualifies the words that follow -- according to its plain language, § 667-5.7 provides that at the public sale, a mortgagee cannot require the successful bidder to pay more than a ten percent downpayment.  But § 667-5.7 is

silent regarding when, after the auction, a mortgagee can demand the remaining

purchase price.[3]

Had the legislature omitted the prepositional phrase "[a]t any public

sale pursuant to section 667-5," the statute would arguably be ambiguous because

the phrase "the successful bidder at the public sale" could be read to refer only to

the successful bidder and thus exclude any temporal limitation.  The inclusion of

the prepositional phrase, however, can be read only as a temporal limitation -- that

is, the limitation on the downpayment applies solely to the time of the public sale.

Otherwise, the prepositional phrase would be superfluous.  *See Tax Appeal of Dir.*

*of Taxation v. Med. Underwriters of Cal.*, 115 Haw. 180, 196, 166 P.3d 353, 369

(2007) ("It is a cardinal rule of statutory construction that courts are bound, if

rational and practicable, to give effect to all parts of a statute, and that no clause,

sentence, or word shall be construed as superfluous, void, or insignificant if a

construction can be legitimately found which will give force to and preserve all the

---

[3]  Plaintiff argues that § 667-5.7 is "clearly ambiguous" because it is unclear whether the "public sale" in § 667-5.7 refers to the auction only, or the entire nonjudicial foreclosure process, which includes the auction and continues until the mortgagee files a notice of sale in the bureau of conveyances.  The court disagrees -- § 667-5.7 refers to "the successful bidder at the public sale," meaning that the "public sale" is the auction.  That the "public sale" refers to the auction and not the entire process is further supported by reading § 667-5.7 in context with the other provisions in this Part, which require the mortgagee to take various actions before and after the "day of sale."  *See* HRS § 667-5; *see also Mainaaupo*, 117 Haw. at 247, 178 P.3d at 13 (stating that the court "must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose").

words of the statute." (citations omitted)).

Based on the analysis above, the court finds that the plain language of § 667-5.7 creates no requirement limiting when, after the public sale, the mortgagee can demand payment of the balance.  Given the plain language of § 667-5.7, any discussion of legislative history is unnecessary.  As the Hawaii Supreme Court has explained "[i]t is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning.  Instead, our sole duty is to give effect to the statute's plain and obvious meaning." *T-Mobile USA, Inc. v. County of Haw. Planning Comm'n*, 106 Haw. 343, 352-53, 104 P.3d 930, 939-40 (2005) (quoting *State v. Mueller*, 102 Haw. 391, 394, 76 P.3d 943, 946 (2003)); *see Mainaaupo*, 117 Haw. at 247, 178 P.3d at 13 ("Absent an absurd or unjust result, *see State v. Haugen*, 104 Haw. 71, 77, 85 P.3d 178, 184 (2004), this court is bound to give effect to the plain meaning of unambiguous statutory language and may only resort to the use of legislative history when interpreting an ambiguous statute." (citation and quotation signals omitted)); *see also Carlisle v. One (1) Boat*, 119 Haw. 245, 259, 195 P.3d 1177, 1191 (2008).

The court also finds, however, that even if § 667-5.7 was at all ambiguous, the legislative history provides Plaintiff no relief.  The Senate

Committee on Consumer Protection and Commerce expressly considered, and rejected including a provision outlining when a mortgagee could require full payment. Specifically, the Committee removed a provision providing that the balance of the successful bid price would be due within ninety days following the sale. *See* Senate Stand. Com. Rep. No. 3422, *available at* http://www.capitol.hawaii.gov/session2006/commreports/hb3100_SD1_sscr3422_. htm. By deciding to delete this provision, it appears that the legislature intended to leave open when, after the auction, the mortgagee could demand full payment.[4] The court therefore finds that Plaintiff cannot allege a violation of § 667-5.7 based on Defendants' requirement that the successful bidder make full payment within

---

[4] The House Committee on Consumer Protection and Commerce also considered limiting the downpayment requirement to not more than twenty-five percent of the highest successful bid, and ultimately amended the bill to limit the requirement even more, by limiting the downpayment requirement to ten percent. The Committee explained that this limitation will "increase the number of people able to bid on the property at the foreclosure sale," which "will allow the property to be sold for a higher price and reduce the chances that there will be a deficiency judgment against the mortgagor." *See* House Stand. Com. Rep. No. 670-06, *available at* http://www.capitol.hawaii.gov/session2006/commreports/HB3100_HD1_HSCR670-06_.htm. There is no mention, however, regarding when the balance would be due, much less any other statements that would otherwise support Plaintiff's proffered interpretation of § 667-5.7. Further, while the legislative history evinces a general intent to increase bidders at these auctions, such intent is in line with the general purposes of the statute the Hawaii Supreme Court identified, which are to (1) "protect the debtor from a wrongful loss of property," (2) "ensure that *properly conducted sales* are final between the parties and conclusive as to bona fide purchasers," and (3) "give creditors a quick, inexpensive remedy against defaulting debtors." *Lee v. HSBC Bank USA*, 121 Haw. 287, 291, 218 P.3d 775, 779 (2009) (citation and quotation signals omitted). Defendants' requirement that full payment be made within twenty-one days after the auction does not appear to conflict with any of these purposes, especially where the Committee took out any requirements regarding when full payment was required.

10

twenty-one days after the auction.

In opposition, Plaintiff makes a policy argument -- HRS § 667-5.7 should be construed to prevent the mortgagee from requiring the successful bidder to pay more that ten percent of the total price at any time prior to closing because requiring full payment prior to closing dissuades potential bidders.  To construe § 667-5.7 as preventing a mortgagee from requiring full payment before closing would violate another "cardinal" canon of construction that a "court cannot change the language of the statute, supply a want or enlarge upon it in order to make it suit a certain state of facts."  *T-Mobile USA, Inc.*, 106 Haw. at 353, 104 P.3d at 940 (quotation and citation signals omitted).  The legislature, not this court, makes such policy decisions.  Further, while the court recognizes that in ordinary property sales full payment occurs at closing, this is a nonjudicial foreclosure where the mortgagee was trying to recover on the mortgage loan.  Plaintiff offers no explanation why, under these circumstances, Defendants' actions of requiring full payment twenty-one days after the auction and nine days before closing conflicts with the intent of this statute.[5]

In sum, the court finds that Defendants' requirement that the

---

[5]  While there could potentially be circumstances where a mortgagee's actions substantially violate the purpose of § 667-7.5 by, for example, requiring full payment within twenty-four hours after the auction, the court is not presented with such facts.

successful bidder pay the balance of the successful bid within twenty-one days

after the auction does not violate § 667-5.7.

>    **2.    _HRS § 667-5_**

Plaintiff argues that BONY violated HRS § 667-5 by accepting its

own credit bid, as well as by using a notice that referred to a Website for additional

auction instructions.  Moving Defendants argue, and the court agrees, that HRS §

667-5 does not proscribe either of these activities.

Contrary to Plaintiff's argument, nothing in HRS § 667-5 requires  a

notice to include all bidding instructions or prevents a mortgagee from making a

credit bid.  As to the notice, § 667-5 provides that the attorney representing the

mortgagee must:

>    (1) Give notice of the mortgagee's, successor's, or
>    person's intention to foreclose the mortgage and of the
>    sale of the mortgaged property, by publication of the
>    notice once in each of three successive weeks (three
>    publications), the last publication to be not less than
>    fourteen days before the day of sale, in a newspaper
>    having a general circulation in the county in which the
>    mortgaged property lies; and
>    (2) Give any notices and do all acts as are authorized or
>    required by the power contained in the mortgage.

HRS § 667-5(a).  Because this language provides no requirements regarding the

_content_ of the notice, Defendants' reference to a Website for further instructions

does not appear to violate this provision.

That § 667-5 does not prevent a mortgagee from issuing a notice that refers potential bidders to a Website for further instruction is further supported by reading § 667-5 in context with the other provisions in HRS Chapter 667.  For example, in comparison to § 667-5, § 667-27, governing the alternate power of sale foreclosure process, specifically provides that a public notice include "the terms and conditions of the public sale."  HRS § 667-27(a)(9).  The Hawaii Legislature could have chosen to include such language in § 667-5, but did not.  *See In re Water Use Permit Applications*, 94 Haw. 97, 151, 9 P.3d 409, 463 (2000) (recognizing rule of statutory construction that "[w]here [the legislature] includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion." (citation and quotation signals omitted)); *see also Singh v. Holder*, 591 F.3d 1190, 1195 (9th Cir. 2010).

Finally, neither party points to anything in the legislative history, and the court could not find anything either, that suggests the Hawaii Legislature intended HRS § 667-5 to require a mortgagee to include all terms of an auction within the notice.  Accordingly, the court finds that Plaintiff cannot state a claim that Defendants violated HRS § 667-5 by referring potential bidders to a Website for further auction instructions.

As to the mortgagee's right to make a credit bid, nothing in any provision of HRS Ch. 667 Part I, much less § 667-5, makes any reference to limiting a mortgagee's right to bid at the auction.  While Plaintiff argues that such practice may dissuade other bidders, the court cannot read such prohibition into a statute that is completely silent regarding the issue.  The court therefore rejects that HRS § 667-5 imposes such requirement.

In sum, Plaintiff has failed to state a claim for violation of HRS Chapter 667 Part 1.  The court therefore GRANTS Moving Defendants' Motion to Dismiss Count I of the FAC.

## B.  Violation of HRS §§ 480-12 and 480-13 (Count II)

The FAC alleges that all Defendants committed unfair and deceptive trade practice in consummating the 2005 mortgage loan transactions with Plaintiff and seeks damages pursuant to HRS § 480-13 as well as rescission of the transactions pursuant to HRS § 480-12.  Moving Defendants argue, and the court agrees, that Plaintiff's claim as alleged is barred by the applicable statute of limitations.[6]

---

[6] Moving Defendants further argue that Plaintiff cannot assert a Chapter 480 claim for damages against Moving Defendants because they were not the originating lender and the FAC alleges no deceptive acts by Moving Defendants.  Defs.' Suppl. Reply 6-7.  The court recognizes that Plaintiffs may assert a Chapter 480 claim for rescission against a subsequent assignee.  *See Williams v. Rickard*, 2010 WL 2640102, at *4 (D. Haw. June 30, 2010).  Because the FAC is

(continued...)

Claims brought pursuant to HRS Ch. 480 are subject to a four-year statute of limitations.  Specifically, § 480-24 provides:

> Any action to enforce a cause of action arising under this chapter shall be barred unless commenced within four years after the cause of action accrues . . . .  For the purpose of this section, a cause of action for a continuing violation is deemed to accrue at any time during the period of the violation.

This four-year period begins to run from the date of the occurrence of the violation, as opposed to the discovery of the alleged violation.  *See McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1289 (D. Haw. 2007) ("The Court holds that the applicable rule governing the statute of limitations for claims arising under Haw. Rev. Stat. § 480-2 is the occurrence rule.").

Defendants' alleged conduct that forms the basis of Plaintiff's unfair and deceptive trade practice claim concerns the loan transactions, which were entered into on February 15, 2005.  When Plaintiff brought this action on March 10, 2010 -- over five years after the parties entered into the loans and the alleged violations occurred -- the statute of limitations had already run unless the statute of limitations may be tolled for some reason.

In opposition, Plaintiff argues that she is seeking rescission, which

---

[6](...continued)
seeking declaratory relief only against Moving Defendants, *see* FAC ¶ 36, the court need not address this argument.

15

does not "arise under" Chapter 480.  Plaintiff seeks rescission of the loan transactions pursuant to § 480-12, which provides that "any contract or agreement in violation of this chapter is void and is not enforceable at law or in equity." Section 480-12 is contained within HRS Ch. 488 and thus, contrary to Plaintiff's argument, § 480-24's four-year statute of limitations, which extends to "[a]ny action to enforce a cause of action arising under this chapter," also applies to § 480-12.  Regardless of how Plaintiff tries to cast her claim -- as either alleging a violation of, or simply seeking rescission pursuant to, Chapter 480 -- Plaintiff is alleging a violation of law set forth in Chapter 480.  To find the loan transactions void, the very terms of § 480-12 require the court first to determine that Defendants in fact violated Chapter 480.  *See* HRS § 480-12 ("Any contract or agreement *in violation of this chapter* is void and is not enforceable at law or in equity." (emphasis added)).

       During the hearing, Plaintiff's counsel also argued that this claim takes benefit of Hawaii's fraudulent concealment provision, HRS § 657-20, which states that where the defendant

             fraudulently conceals the existence of the cause of action
             . . . from the knowledge of the person entitled to bring the
             action, the action may be commenced at any time within
             six years after the person who is entitled to bring the
             same discovers or should have discovered, the existence
             of the cause of action . . ., although the action would

16

otherwise be barred by the period of limitation.

As used in § 657-20, fraudulent concealment means the "employment of artifice, planned to prevent inquiry or escape investigation, and [mislead] or hinder acquirement of information disclosing a right of action." *Au v. Au*, 63 Haw. 210, 215, 626 P.2d 173, 178 (1981) (quotation and citation signals omitted); *see also Gast v. Kwak*, 396 F. Supp. 2d 1150, 1157 (D. Haw. 2005) (applying HRS § 657-20); *Nakamoto v. Hartley*, 758 F. Supp. 1357, 1364-65 (D. Haw. 1991) (citing *Au* and applying HRS § 657-20).

Fraudulent concealment therefore requires that a plaintiff show that a defendant acted affirmatively and fraudulently to conceal the cause of action. *See Au*, 63 Haw. at 215, 626 P.2d at 178; *Gast*, 396 F. Supp. at 1157. *Au* states that

> [i]t is not necessary that a party should know the details
> of the evidence by which to establish his cause of action.
> It is enough that he knows that a cause of action exists in
> his favor, and when he has this knowledge, it is his own
> fault if he does not avail himself of those means which
> the law provides for prosecuting or preserving his claim.

*Au*, 63 Haw. at 216, 626 P.2d at 178 (citation and quotations signals omitted).

The FAC does not assert a claim of affirmative concealment -- rather, the FAC asserts simply that Plaintiff "did not learn of the fraudulent unfair and deceptive acts and practices" until she received notice of the nonjudicial foreclosure on December 11, 2009. *See* FAC ¶¶ 23, 32. Viewing the facts

liberally and in Plaintiff's favor, the FAC does not identify any affirmative act of concealment Defendants committed -- let alone that they employed a plan sufficient to trigger § 657-20.[7]  *See Au*, 63 Haw. at 215, 626 P.2d at 178; *see also Gast*, 396 F. Supp. 2d at 1157 (finding fraudulent concealment did not apply for lack of "affirmative steps to conceal anything").  Thus, the FAC does not suggest that the statute of limitations may be tolled pursuant to § 657-20.

Because the statute of limitations has run on Plaintiff's claims and no tolling provision applies, Plaintiff has failed to state a claim upon which relief can be granted.  Accordingly, the court GRANTS Moving Defendants' Motion to Dismiss Count II of the FAC.

## C.   Title Accounting (Count III)

The FAC alleges that MERS should be required to account to Plaintiff "for all transfer of ownership of said 2005 Notes and 2005 Mortgages since their initiation."  FAC ¶ 37.  Moving Defendants argue that this claim should be dismissed because MERS has no duty to Plaintiff that would support the extraordinary remedy of an equitable accounting.  Based on the following, the court agrees.

---

[7]  While Plaintiff asserts that Countrywide "created a false loan application," Plaintiff signed the loan application and apparently was given a copy of the application such that Defendants' alleged falsification of information does not support tolling of the statute of limitations.

"The action of accounting is designed to provide a remedy to compel a person who, by virtue of some confidential or trust relationship, has received or been entrusted with money or property belonging to another or which is to be applied or disposed of in a particular manner, to render an account thereof." *Block v. Lea*, 5 Haw. App. 266, 277, 688 P.2d 724, 732-33 (1984) (quoting 1 Am. Jur. 2d Accounts & Accounting § 45 (1962)).  "The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies is . . . the absence of an adequate remedy at law." *Porter v. Hu*, 116 Haw. 42, 55, 169 P.3d 994, 1007 (Haw. App. 2007) (citation and quotation signals omitted).

The FAC contains no facts explaining why Plaintiff is entitled to an equitable accounting from MERS -- the FAC fails to allege what relationship MERS had with Plaintiff, the basis of that relationship, and why no adequate remedy at law exists.  As this court has previously recognized, "MERS is simply a company created 'to track ownership interests in residential mortgages[;] mortgage lenders subscribe to MERS' and 'agree to appoint MERS to act as their common agent on mortgages they register with the MERS system.'" *In re O'Kelley*, 420 B.R. 18, 26 (D. Haw. 2009) (quoting *MERSCORP, Inc. v. Romaine*, 861 N.E.3d 81, 84 (N.Y. 2006).  As such, MERS does not owe a duty to Plaintiff because she had no "confidential or trust relationship" with MERS.  *See, e.g.*, *Gzell v. Novastar*

*Mortgage, Inc.*, 2010 WL 3293537, at * 10 (E.D. Cal. Aug. 19, 2010) (finding no actionable duty to impose liability on MERS because a lender of "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money" (quotation and citation signals omitted)); *Lane v. Vitek Real Estate Indus. Grp.*, --- F. Supp. 2d ---, 2010 WL 1956707, at *10 (E.D. Cal. May 13, 2010) (dismissing breach of fiduciary duty claim because plaintiff failed to plead facts to "override the presumption that a lender owes no fiduciary duty to its borrowers"); *Mulato v. WMC Mortg. Corp.*, 2010 WL 1532276, at *2 (N.D. Cal. Apr. 16, 2010 (dismissing claim where plaintiff failed to plead facts to show that MERS exceeded its traditional role involved with lender of money to support a duty).

In opposition, Plaintiff argues that she had a special relationship with MERS sufficient to support this claim because one of the mortgages, attached to the FAC, provides that "MERS is the mortgagee under this Security Agreement." FAC Ex. D.  Regardless of what the exhibits to the FAC provide, the FAC itself fails to include any specific allegations establishing a relationship between MERS and Plaintiff, and instead alleges that Plaintiff entered into loan transactions with Countrywide.  *See* FAC ¶ 8.  Further, even if the FAC had alleged that MERS was

the mortgagee, Plaintiff ignores that Exhibit D to the FAC provides that MERS "is acting solely as a nominee for Lender and Lender's successors and assigns." *Id.* Ex. D.  As such, Plaintiff cannot allege that she had a special relationship with MERS sufficient to support an equitable accounting.  Indeed, if Plaintiff is able to state a claim upon which relief may be granted, she may seek such information through discovery.

The court therefore GRANTS Moving Defendants' Motion to Dismiss Count III of the FAC.

## V.  <u>CONCLUSION</u>

Based on the above, the court GRANTS Moving Defendants' Motion. The FAC is dismissed as to BONY and MERS.  Plaintiff is GRANTED LEAVE to file a second amended complaint by November 5, 2010 alleging a claim for violation of HRS Ch. 480 against BONY and MERS.  Given the analysis above, however, the court finds that granting Plaintiff leave to allege violations of HRS Ch. 667 or for equitable accounting would be futile because these claims fail as a

///

///

///

///

matter of law.  Failure to submit a second amended complaint by November 5,

2010 will result in automatic dismissal of this action as to BONY and MERS.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 14, 2010.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Rundgren v. The Bank of New York Mellon, et al.*, Civ. No. 10-00252 JMS/LEK, Order Granting
Defendants Bank of America Corporation, and Mortgage Electronic Registration Systems, Inc.'s
Motion to Dismiss First Amended Complaint Filed on July 2, 2010