IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHELE COLLEEN RUNDGREN, ) | CIVIL NO. 10-00252 JMS/BMK |
| ) | |
| Plaintiff, ) | ORDER GRANTING |
| ) | DEFENDANTS BANK OF NEW |
| vs. ) | YORK MELLON, |
| ) | COUNTRYWIDE HOME LOANS, |
| THE BANK OF NEW YORK ) | INC., AND BANK OF AMERICA |
| MELLON, a New York corporation; ) | CORPORATION'S MOTION FOR |
| COUNTRYWIDE HOME LOANS, ) | SUMMARY JUDGMENT |
| INC., a California corporation, by ) | |
| merger now BANK OF AMERICA; and ) | |
| BANK OF AMERICA, a California ) | |
| corporation, ) | |
| Defendants. ) | |
| _____ ) | |

**ORDER GRANTING DEFENDANTS BANK OF NEW YORK MELLON, COUNTRYWIDE HOME LOANS, INC., AND BANK OF AMERICA CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff originally filed this action on March 10, 2010, alleging claims against various Defendants stemming from mortgage transactions and a subsequent notice of nonjudicial foreclosure concerning real property located at 4487 Emmalani Drive, Princeville, Hawaii 96722 (the "subject property"). After three rounds of motions practice, a single claim remains in Plaintiff's Second Amended Complaint ("SAC"), alleging that Defendants Bank of New York Mellon ("BONY"), Countrywide Home Loans, Inc. ("CHL"), and Bank of America

("BOA") (collectively, "Defendants") violated Hawaii Revised Statutes ("HRS") Ch. 480 in consummating the 2005 mortgage loan transactions with Plaintiff. Specifically, the SAC asserts that Defendants (1) tricked Plaintiff into signing a loan application that greatly exaggerated her monthly income and assets; (2) obtained a bloated appraisal of the subject property to increase the loan amount and their corresponding commissions; (3) prevented Plaintiff from reviewing any of the closing documents she signed; and (4) charged Plaintiff exorbitant loan origination, processing fees, and/or yield spread premiums. Doc. No. 44, SAC ¶¶ 11-14. Although the loan closing occurred more than five years before Plaintiff filed this action, the SAC asserts that Defendants kept these facts hidden from her during the closing by preventing her from reading any of the documents, and she did not discover these facts until 2009. *Id.* ¶ 21.

Currently before the court is Defendants' Motion for Summary Judgment, arguing, among other things,[1] that Plaintiff's claim is time-barred by the four-year statute of limitations, which applies to this claim. Based on the following, the court GRANTS the Motion for Summary Judgment.

---

[1] Because the court finds that Plaintiff's claim is time-barred, the court does not address Defendants' other summary judgment arguments.

## II. BACKGROUND

A. **Factual Background**

Plaintiff and her son Rex Rundgren acquired the subject property in 1999. Doc. No. 102, Defs.' Concise Statement of Facts ("CSF") ¶ 2.[2] In 2003, Rex Rundgren deeded his interest in the subject property to Plaintiff. *Id.* ¶ 3. Although Plaintiff's husband, Todd, was not on the title to the subject property, Plaintiff was using his money to make the mortgage payments. *Id.* ¶ 4.

At some point in time, Plaintiff began thinking about refinancing her mortgage loans so that she could get some cash out of the equity of the subject property. *Id.* ¶ 5. Plaintiff's friends, who previously worked at Bank of Hawaii and had become mortgage brokers, were telling everyone in Plaintiff's neighborhood to refinance so they could "pull out cash" from their homes. *Id.* ¶ 6. Plaintiff thought it would be "silly" not to refinance because she and her husband had credit card bills that Plaintiff wanted to pay off and her kids were going off to college. *Id.* ¶ 7. As a result, Plaintiff agreed for her friend and mortgage broker, Mike Guilbeault, to refinance so Plaintiff could get a better interest rate and obtain some cash. *Id.* ¶ 8. Guilbeault told Plaintiff that "he could just take care of all the

---

[2] Where the parties do not dispute a particular fact, the court cites directly to Defendants' CSF.

paperwork and all [Plaintiff] had to do was sign papers and he'd hand [her] a check." *Id.* ¶ 9. Plaintiff entrusted Guilbeault and his business partner, Rick Leibow, to handle the loan paperwork because Guilbeault had previously been Plaintiff's "banker," and thus, he was already aware of Plaintiff's and her husband's income and finances. *Id.* ¶ 10. Relying on Guilbeault, Plaintiff "didn't pay much attention" to the loan details. *Id.* ¶ 11.

Plaintiff signed two different loan applications (in December 2004 and February 2005), which acknowledged outstanding liens on the subject property totalling $920,000, and which stated that Plaintiff's monthly income was $19,750.[3] *See* Doc. Nos. 102-5, -6, Defs.' Ex. D, E, *see also* Doc. No. 102-2, Defs.' Ex. A at 41, 93 (acknowledging signatures). Although her stated monthly income was incorrect (Plaintiff had little to no income at this time), Plaintiff had been using her husband's income to make her existing mortgage payments and planned to continue using his income to make payments on the refinanced loans. Doc. No.

---

[3] Plaintiff asserts in her CSF that she "never signed with such information on the forms" and "signed either in blank or not given chance to read before signing." *See* Doc. No. 124, Pl.'s CSF ¶ 14. The evidence Plaintiff cites, however, does not support this proposition. For example, Plaintiff cites to page 15 of her deposition transcript, *see* Doc. No. 124-9, Pl.'s Ex. 6 at 15, yet this page merely discusses renting out the subject property during the foreclosure process. Plaintiff also cites to the declaration of her accountant, Kory Klein, who asserts that Plaintiff told him that Plaintiff did not recall receiving any documents and that during escrow she "robotically signed and initialed the pages where she was told to sign not even getting the chance to review them." *See* Doc. No. 124-1, Kory Klein Decl. ¶¶ 9, 17-18. As explained below, these statements of what Plaintiff allegedly told Klein are inadmissible hearsay.

102, Defs.' CSF ¶ 16. Specifically, Plaintiff anticipated that her husband was going to make between one and two million dollars on tour with the "New Cars" band in late summer 2005, and Plaintiff planned to use this income to make her loan payments. *Id.* ¶ 17.

When it was time for the loan closing, Plaintiff's mortgage broker called Plaintiff and instructed her to go to Title Guaranty to sign the loan documents. *Id.* ¶ 18. The only two people in the room during the February 2005 closing were Plaintiff and one or two representatives from Title Guaranty; Plaintiff's mortgage broker did not attend. *See* Doc. No. 102-2, Defs.' Ex. A at 92. During the closing, a representative of Title Guaranty would flip to a particular section among the documents that needed to be signed, and in "one or two sentences" explain what the document meant and then have Plaintiff sign it.[4] *Id.* at 94. The Title Guaranty representative would then flip to another section, explain what that section meant, and have Plaintiff sign again. *Id.* During this process, Plaintiff does not recall the Title Guaranty representatives ever encouraging her to read the documents on her own, Doc. No. 124-9, Pl.'s Ex. 6 at 146, and Plaintiff

---

[4] Plaintiff disputes this fact in her CSF, asserting that nothing could be clearly explained in only one or two sentences, and the "flipping" to a particular section involved "curling up the pages, exposing only where to sign." Doc. No. 124, Pl.'s CSF ¶ 21. Again, the evidence Plaintiff cites does not support these factual assertions. *See* Doc. No. 124-9, Pl.'s Ex. 6 at 146-47 (testifying that closing took "about a half hour" and that the representatives did not explicitly tell her to read the documents).

did not ask to review the loan closing documents more carefully.  *See* Doc. No. 102-2, Defs.' Ex. A at 96.  According to Plaintiff, it would have taken her a "couple days" to review all the documents, and closing took only half an hour. Doc. No. 124-9, Pl.'s Ex. 6 at 146.  With that said, however, nobody indicated that she could not review the loan documents more carefully if she wanted to.  *See* Doc. No. 102-2, Defs.' Ex. A at 96.

At the time of closing, Plaintiff owed a principal balance of $592,939.12 to Fremont Investment & Loan, and a principal balance of $374,951.04 to Bank of Hawaii.  Doc. No. 102-7, Pls.' Ex. F.  The refinancing Plaintiff received from CHL satisfied both these liens and netted Plaintiff $152,726.38 in cash, while obligating her to CHL in the amount of $966,000 for an adjustable rate loan, and $200,000 in a home equity credit line loan.  *See* Doc. No. 102-7, Defs.' Ex. F, Doc. No. 102, Defs.' CSF ¶ 29.  During the closing, Plaintiff received and signed several documents disclosing how much Plaintiff would be obligated to pay on the loans, and the closing fees.  Doc. Nos. 102-10, -11, Defs.' Exs. I, J; *see also* Doc. No. 102-2, Defs.' Ex. A at 100, 106.

Beginning in March 2005, Plaintiff made monthly payments owed under the mortgage loans she obtained from CHL.  Doc. No. 102, Defs.' CSF ¶ 31. Ultimately, Plaintiff's husband did not make all the money Plaintiff was

anticipating (the "New Cars" tour was cancelled), and Plaintiff was unable to make her monthly loan payments. *Id.* ¶ 32. BONY therefore initiated a nonjudicial foreclosure sale, and purported to sell the subject property at public auction on March 10, 2010.

**B.     Procedural Background**

On March 10, 2010, Plaintiff filed her Complaint in the First Circuit Court of the State of Hawaii, and Defendants subsequently removed the action to this court. After certain Defendants moved to dismiss the Complaint, Plaintiff filed her First Amended Complaint ("FAC") on July 2, 2010, alleging claims for (1) wrongful nonjudicial foreclosure in violation of HRS Ch. 667 against BONY (Count I); (2) violation of HRS §§ 480-12 and 480-13 against all Defendants (Count II); and (3) title accounting against MERS (Count III).

On October 14, 2010, the court granted Defendants' Motion to Dismiss the FAC (the "October 14 Order"), with leave for Plaintiff to file a second amended complaint alleging a claim for violation of HRS Ch. 480. In response, on November 5, 2010, Plaintiff filed her SAC alleging claims against Defendants for (1) violation of HRS Ch. 480 (Count I); (2) violation of 18 U.S.C. § 1001 (Count II); and (3) wrongful foreclosure (Count III).

On February 28, 2011, the court granted in part and denied in part

Defendants' Motion to Dismiss the SAC (the "February 2011 Order"). *Rundgren v. Bank of New York Mellon*, 777 F. Supp. 2d 1224 (D. Haw. 2011). As to Plaintiff's HRS Ch. 480 claim, the February 2011 Order explained that unless tolling applies, this claim is time-barred -- the loan transaction occurred more than five years before Plaintiff filed this action, and HRS Ch. 480 claims are subject to a four-year statute of limitations. *Id.* at 1227. The February 2011 Order nonetheless determined that the SAC alleged sufficient facts to toll the statute of limitations based on the equitable tolling doctrine of fraudulent concealment. *Id.* at 1230-32. The February 2011 Order dismissed the other Counts of the SAC.[5]

On February 13, 2013, Defendants filed their Motion for Summary Judgment. Doc. No. 101. Plaintiff filed an Opposition on May 22, 2013, Doc. No. 123, and Defendants filed a Reply on May 30, 2013. Doc. No. 126.[6] A hearing was held on June 17, 2013.

---

[5] In her Opposition, Plaintiff suggests that the court should reconsider its prior rulings dismissing Plaintiff's other claims pursuant to Federal Rule of Civil Procedure 54(b). *See* Doc. No. 123, Pl.'s Opp'n at 19. The court declines this request, and focuses on the remaining claim in this action.

[6] Defendants also filed a Motion to Strike (1) the Declaration of William C. Sarsfield in its Entirety and (2) Inadmissible Hearsay Statements in the Declaration of Kory Klein. *See* Doc. No. 127. To the extent the Motion seeks to strike hearsay statements of Klein, the Motion is GRANTED for the reasons explained below. The court DEEMS MOOT the remainder of the Motion, however, as addressing issues not relevant to the court's summary judgment determination.

### III. **STANDARD OF REVIEW**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

9

247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV. **DISCUSSION**

The basis of Plaintiff's HRS Ch. 480 claim is that Defendants committed illegal, unfair, and deceptive trade practices in placing Plaintiff into a loan that she was not qualified for and based on an inflated value of the subject property. *See* Doc. No. 44, SAC ¶¶ 11-15. Claims brought pursuant to HRS Ch. 480 are generally subject to a four-year statute of limitations,[7] and Plaintiff brought

---

[7] Specifically, § 480-24(a) provides:

(continued...)

this action over five years after the loan transaction. Plaintiff nonetheless asserts that the statute of limitations should be tolled because Defendants concealed the relevant facts from here during the closing of the loan transaction. *See* Doc. No. 44, SAC ¶ 24. In contrast, Defendants argue that Plaintiff's HRS Ch. 480 claim is time-barred because there is no genuine issue of material fact supporting that CHL fraudulently concealed these facts from her during the closing. Based on the following, the court agrees.

As the February 2011 Order explained, the statute of limitations on a Ch. 480 claim generally begins to run from the date of the occurrence of the violation (absent a continuing violation), unless the limitations period may be tolled based on the equitable tolling doctrine of fraudulent concealment. *See Rundgren*, 777 F. Supp. 2d at 1228. To invoke this doctrine, a plaintiff must plead facts showing affirmative concealment by the defendant:

> To avoid the bar of limitation by invoking the concept of fraudulent concealment, the plaintiff must allege facts showing affirmative conduct upon the part of the defendant which would, under the circumstances of the

---

[7](...continued)
Any action to enforce a cause of action arising under this chapter shall be barred unless commenced within four years after the cause of action accrues . . . . For the purpose of this section, a cause of action for a continuing violation is deemed to accrue at any time during the period of the violation.

> case, lead a reasonable person to believe that he did not have a claim for relief. Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure.

*Id.* at 1230 (quoting *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978)). Thus, to carry "the burden of pleading and proving fraudulent concealment[, the plaintiff] must plead facts showing that [the defendant] affirmatively misled [the plaintiff], and that [the plaintiff] had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (quotations omitted); *see E.W. French & Sons, Inc. v. Gen. Portland Inc.*, 885 F.2d 1392, 1399 (9th Cir. 1989) (outlining elements); *see also Au v. Au*, 63 Haw. 210, 215, 626 P.2d 173, 178 (1981) ("Fraudulent concealment involves the actions taken by a liable party to conceal a known cause of action."). A plaintiff has constructive knowledge if it "should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim." *Hexcel Corp.*, 681 F.3d at 1060; *see also Blair v. Ing*, 95 Haw. 247, 264, 21 P.3d 452, 469 (2001) ("Under the discovery rule, a cause of action does not 'accrue,' and the limitations period therefore does not begin to run, until the plaintiff knew or should have known of the defendant's negligence."

(quotations and citations omitted)).

As the February 2011 Order explained, the SAC alleged sufficient facts that CHL representatives engaged in affirmative acts of concealment during the loan closing by preventing Plaintiff from reading the documents (Defendants allegedly only showed her where to sign without allowing her to read the documents themselves). *Rundgren*, 777 F. Supp. 2d at 1232. But now on summary judgment, Plaintiff must establish *facts* supporting that CHL fraudulently concealed the relevant facts from Plaintiff during the closing. Plaintiff has failed to do so.

First, there is no evidence suggesting that Plaintiff was prevented from reading any of the loan documents at closing. Rather, at closing, a representative of Title Guaranty would flip to a particular section among the documents that needed to be signed, and in "one or two sentences" explain what the document meant and then have Plaintiff sign it. *See* Doc. No. 102-2, Defs.' Ex. A at 94. Although Plaintiff does not recall whether the Title Guaranty representatives ever explicitly encouraged her to read the documents on her own, Doc. No. 124-9, Pl.'s Ex. 6 at 146, she did not ask to review the loan closing documents more carefully and nobody indicated that she couldn't review the loan documents more carefully if she wanted to. *See* Doc. No. 102-2, Defs.' Ex. A at

96. In other words, there is no evidence of any concealment; rather, Plaintiff simply chose not to read the documents she was signing.[8] *See also Rutlege*, 56 F.2d at 250 ("Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure.").

Further, even if any concealment occurred (which the court does not find), the evidence establishes that either at or shortly after closing, Plaintiff was provided facts that, following duly diligent inquiry, would have advised Plaintiff of her claim. Specifically, during the closing, Plaintiff received and signed several documents disclosing how much Plaintiff was obligated to pay on the loans, as well as the closing fees. Doc. Nos. 102-10, -11, Defs.' Exs. I, J; *see also* Doc. No. 102-2, Defs.' Ex. A at 100, 106. And after closing, Plaintiff made monthly payments owed under the mortgage loans she obtained from CHL. Doc. No. 102, Defs.' CSF ¶ 31. Thus, Plaintiff was aware, or at the very least had within her possession information to make her aware of, the amounts of her loans, the payments required, and the closing costs. This information therefore put Plaintiff on notice of any claim that she was coerced into agreeing to loans that she could

---

[8] Defendants also argue that there is no evidence that CHL was responsible for any concealment given that none of its representatives was present at the closing. Because Plaintiff has failed to establish any concealment in the first place, the court need not address this argument.

not afford.⁹

In opposition, Plaintiff argues that the closing process followed the "customary 'sign her, sign her' [sic]" process, which creates a genuine issue of material fact that the facts of the loans were concealed from Plaintiff. Doc. No. 123, Pl.'s Opp'n at 29. The court rejects this argument -- regardless of whether Title Guaranty representatives indicated where Plaintiff should sign, the undisputed evidence establishes that nobody prevented Plaintiff from reading the documents.

Plaintiff further points to the declaration of Plaintiff's accountant, Kory Klein, as creating a genuine issue of material fact that Plaintiff's HRS Ch. 480 claim was concealed from her. Klein asserts that in 2009, he asked for the loan documents and in response, Plaintiff stated that she did not recall receiving them. Doc. No. 124-1, Klein Decl. ¶ 9. When Klein later received the loan documents from BOA and notified Plaintiff of the misstatements regarding her income, Klein asserts that Plaintiff repeatedly said "that she never gave Mr. Leibow any information as to her assets and would never signed the application had she seen or had known the content." *Id.* ¶¶ 14, 17. Klein further asserts that

---

⁹ Indeed, Plaintiff bases her HRS Ch. 480 claim on the fact that she was given a loan that she could not afford. *See* Doc. No. 123, Pl.'s Opp'n at 24 ("The fact that Rundgren was given a loan that she could not afford is evidence by itself . . . of a material UDAP violation."). Plaintiff was certainly on notice of this claim when she was notified of her payment obligations.

Plaintiff told him that she "robotically signed and initialed the pages where she was told to sign not even getting the chance to review them." *Id.* ¶ 18.

These statements are hearsay because Plaintiff submits her own statement (as recited by Klein) for the truth of the matter asserted -- that Plaintiff was not allowed to read the loan documents at the closing. And although Plaintiff argues that these statements are admissible as an excited utterance under Federal Rule of Evidence 803(2), Doc. No. 130, Pl.'s Opp'n to Defs.' Mot. to Strike at 5, the facts do not support application of this Rule. Klein's Declaration does not suggest that he provided information so startling to render Plaintiff's "normal reflective thought processes inoperative," and Plaintiff's response is not "a spontaneous reaction to [Klein's information] and not the result of reflective thought." *See United States v. Alarcon-Simi*, 300 F.3d 1172, 1175 (9th Cir. 2002) (outlining elements); *see also United States v. McLennan*, 563 F.2d 943, 948 (9th Cir. 1977) (explaining that this exception applies where the declarant "was so excited or distraught at the moment of the utterance that he did not reflect (or have an opportunity to reflect) on what he was saying"). Further, even if Klein's statements regarding what Plaintiff told him were admissible (they are not), these statements still fail to establish a genuine issue of material fact that she could not have discovered her claim earlier.

Finally, Plaintiff seeks a continuance pursuant to Rule 56(d) on the basis that Plaintiff needs to take three more depositions. Federal Rule of Civil Procedure 56(d) provides:

> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Under Rule 56(d), "[t]he requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *see also Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006).[10] "Failure to comply with these requirements 'is a proper ground for denying discovery and proceeding to summary judgment.'" *Family Home & Fin. Ctr.*, 525 F.3d at 827 (quoting *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)); *see also Tatum*, 441 F.3d at 1100

---

[10] Rule 56(d), as quoted, became effective December 1, 2010, and "carries forward without substantial change the provisions of former subdivision (f)." *See* Rule 56 Advisory Committee Notes, 2010 Amendments. The court therefore interprets the new rule by applying precedent discussing former Rule 56(f).

(stating where a party does not satisfy the requirements of Rule 56(f), a district court acts within its discretion in denying the motion).

Although Plaintiff submitted the declaration of her counsel, it does not meet the Rule 56(d) requirements.  Nowhere does counsel explain the specific facts he hopes to elicit from discovery, that the facts he seeks exist, and that the facts are essential to the Opposition.  Counsel has therefore failed to carry his burden in seeking a Rule 56(d) request.

In sum, there is no genuine issue of material fact suggesting that Defendants fraudulently concealed Plaintiff's HRS Ch. 480 claim from her.  The statute of limitations therefore began around the time the loans closed in 2005, and ran before the filing of this action over five years later.  Because Plaintiff's claims are time-barred, the court GRANTS Defendants' Motion for Summary Judgment.

///

///

///

///

///

///

///

## V. **CONCLUSION**

Based on the above, the court GRANTS Defendants' Motion for Summary Judgment. Because no claims remain, the Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 18, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Rundgren v. The Bank of New York Mellon, et al.*, Civ. No. 10-00252 JMS/BMK, Order Granting Defendants Bank of New York Mellon, Countrywide Home Loans, Inc., and Bank of America Corporation's Motion for Summary Judgment